UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
In the Matter of the Arbitration between

ONEBEACON AMERICA INSURANCE CO.,

                              Petitioner,                      **ORDER**

              - and -                             No. 12-CV-5043

SWISS REINSURANCE AMERICA CORP.,

                              Respondent.
-----------------------------------------------------------------------x

Appearances:
John F. Finnegan, Jr.
Chadbourne & Parke LLP
New York, New York

David M. Raim
Chadbourne & Parke LLP
Washington, D.C.
*Counsel for Petitioner*

Mary Kay Vyskocil
Jeffrey L. Roether
Simpson Thacher & Bartlett LLP
New York, New York
*Counsel for Respondent*



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/19/12

Seibel, J.

Before the Court is the Petition by OneBeacon America Insurance Co. ("OBA") to Appoint an Arbitrator pursuant to Section 5 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 5, (Doc. 1), as well as the Cross-Motion to Dismiss or Transfer the Petition or in the Alternative to Enjoin Duplicative Arbitration Pursuant to Section 4 of the Federal Arbitration Act of

1

Respondent Swiss Reinsurance America Corp. ("Swiss Re"), (Doc. 10). For the following reasons, Petitioner's Motion is GRANTED and Respondent's Motion is DENIED.

I. **Background**

The relevant facts are set forth below, and are not in dispute.

A. Factual Background

The instant Petition arises out of OBA's attempt to initiate a second arbitration with Swiss Re pursuant to a reinsurance contract, dubbed the Multi-Line Reinsurance Treaty ("MLRT"), between the parties. (Pet. ¶¶ 9, 11.)[1] OBA paid out numerous insurance claims arising from asbestos-related bodily injuries, (id. ¶¶ 7-8), and sought reinsurance from Swiss Re under the MLRT, (id. ¶ 10). The first arbitration commenced after Swiss Re did not reimburse OBA for the paid-out insurance claims. (Id.) Pursuant to the MLRT, the parties convened an arbitration panel in Boston, Massachusetts, which heard the dispute between OBA and Swiss Re. (Id. ¶ 10; R's Mem. 4-5.)[2] The arbitration panel ultimately ruled in favor of Swiss Re. (Pet. ¶ 10; Vyskocil Dec. Ex. C.)[3] OBA sought review of the panel's award in the United States District Court for the District of Massachusetts (the "District of Massachusetts"); the court affirmed the panel's decision. (Pet. ¶ 10; see OneBeacon Am. Ins. Co. v. Swiss Reinsurance Am. Corp., No. 09-CV-11495, 2010 WL 5395069 (D. Mass. Dec. 23, 2010).)

---

[1] "Pet." refers to the Petition to Appoint an Arbitrator. (Doc. 1.)

[2] "R's Mem." refers to the Memorandum of Law in Opposition to the Petition to Appoint an Arbitrator and in Support of Swiss Reinsurance America Corporation's Motion to Dismiss or Transfer the Petition or in the Alternative to Enjoin Duplicative Arbitration Pursuant to Section 4 of the Federal Arbitration Act. (Doc. 11.)

[3] "Vyskocil Dec." refers to the Declaration of Mary Kay Vyskocil in Opposition to the Petition to Appoint an Arbitrator and in Support of Swiss Re's Motion to Dismiss or Transfer the Petition or in the Alternative to Enjoin Duplicative Arbitration Pursuant to Section 4 of the Federal Arbitration Act. (Doc. 12.)

OBA later re-submitted its reinsurance claim to Swiss Re, this time using a "different ceding methodology."[4] (Pet. ¶ 11.) Swiss Re did not reimburse OBA on this re-submission. (Id. ¶ 12.) As a result, OBA has again instituted arbitration proceedings against Swiss Re pursuant to the MLRT, making an arbitration demand and appointing its own party-appointed arbitrator. (Id. ¶ 13; id. Exs. 1, 2.) Although Swiss Re has apparently engaged in some dialogue with OBA regarding the second arbitration, and has even appointed its own party-appointed arbitrator, the constitution of an arbitration panel pursuant to the MLRT is not complete. (Id. ¶¶ 14, 16; Finnegan Dec. Ex. 4; Vyskocil Dec. Ex. E.)[5]

B.  Procedural Background

OBA brings this action seeking relief under Section 5 of the FAA, 9 U.S.C. § 5, which provides, in relevant part:

> If in the [written] agreement [for arbitration] provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but . . . if a method be provided and any party thereto shall fail to avail himself of such method, . . . then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein . . . .

OBA asks the Court to order Swiss Re to participate in the selection of an umpire pursuant to the MLRT, or in the alternative for the Court to appoint an umpire itself. (Pet. ¶ 22.) The arbitration provision of the MLRT provides, in relevant part:

---

[4] "Ceding" refers to the transfer of risk from a direct insurer, the cedent, to the reinsurer. (Pet. ¶ 2.) Much of the underlying substantive dispute appears to revolve around OBA's "ceding methodology," that is, the method by which OBA aggregated its claims for reinsurance in submitting them to Swiss Re. The details of the various ceding methodologies, and indeed the details of the underlying insurance and reinsurance contracts, are not relevant to the disposition of this motion.

[5] "Finnegan Dec." refers to the first Affidavit of John F. Finnegan. (Doc. 6.)

3

> (a) In the event of any irreconcilable dispute between [Swiss Re] and [OBA] in connection with this Agreement, such dispute shall be submitted to a Board of Arbitration for arbitration.
>
> (b) The Board of Arbitrators shall consist of one arbitrator to be chosen by [Swiss Re] and one arbitrator chosen by [OBA], and, an umpire to be chosen as promptly as possible by the two arbitrators. If the two arbitrators are unable to agree upon an umpire each arbitrator shall name three candidates, two of whom shall be declined by the other arbitrator and the choice shall be made between the two remaining candidates by drawing lots. The arbitrators and umpire shall be disinterested executive officers of insurance companies authorized to transact business in the United States. . . . Any arbitration shall take place in the City of Boston, Massachusetts, unless otherwise mutually agreed.

(Finnegan Dec. Ex. 1, at 12-13; Vyskocil Dec. Ex. A, at SR06828.)[6]

Swiss Re cross-moves to dismiss OBA's Petition to appoint an arbitrator or to transfer the Petition to the District of Massachusetts, or, in the alternative, to enjoin the arbitration pursuant to Section 4 of the FAA, 9 U.S.C. § 4. (Doc. 10.) Section 4 provides, in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action . . . for an order directing that such arbitration proceed in a manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. . . .

---

[6] It is not clear to the Court why the parties have submitted two different versions of the MLRT. Nevertheless, the relevant language of the two versions appears identical.

4

This provision allowing an order to compel arbitration has been interpreted as also authorizing an order enjoining arbitration. (*See* Part II.D. below.) Swiss Re argues that venue for OBA's Section 5 Petition is improper in this District because of the venue limitation provision of Section 4 (limiting the location of compelled arbitration to the district in which the petition was filed) in combination with the arbitration forum clause of the MLRT (requiring arbitration in Boston); it also cites the "common logic" that the forum limitation of Section 4 applies to Section 5. (R's Mem. 8-9.) Swiss Re further argues that, even if venue is proper under Section 5, the Court should exercise its discretion under 28 U.S.C. § 1404(a) and transfer the Petition to the District of Massachusetts, given that the MLRT provides for arbitration to take place in Boston and the previous arbitration hearing was held in Boston. (*Id.* at 9-13.) Swiss Re asks in the alternative that the Court enjoin the arbitration underlying the instant Petition as duplicative and barred by *res judicata*. (*Id.* at 13-19.)

## II.   Discussion

The FAA governs a dispute where: "(1) there is a written arbitration agreement; (2) diversity provides an independent basis for federal jurisdiction; and (3) the underlying transaction involved interstate commerce." *ACEquip Ltd. v. Am. Eng'g Corp.*, 315 F.3d 151, 154 (2d Cir. 2003); *see* 9 U.S.C. § 2. There is no dispute that all three requirements are met. Thus, the FAA governs the instant dispute.

### A.   Motion to Dismiss for Improper Venue

Swiss Re moves to dismiss on the grounds that the instant Petition under Section 5 should have been brought in the District of Massachusetts. Swiss Re, however, cites cases regarding the power to compel arbitration pursuant to Section 4, (*see* R's Mem. 8), which allows a court to compel arbitration only within the district in which the petition is filed. Swiss Re cursorily

5

argues that "common logic dictates" that that limitation ought to apply to Section 5 applications, (*id.* at 9), but Section 5 contains no such limitation. Indeed, the Second Circuit has relied on the linguistic differences between Sections 4 and 5, as well as the "different consequences that follow from the appointment of an arbitrator and an order compelling arbitration," in holding that "a somewhat less stringent standard governs the court's decision to appoint an arbitrator as opposed to its decision to compel arbitration." *See ACEquip*, 315 F.3d at 156. And Swiss Re has not pointed the Court to, nor has the Court been able to find on its own, any authority that suggests that Section 5 should be read to incorporate Section 4's venue limitation. Accordingly, Swiss Re's Motion to Dismiss for improper venue is denied.

B. Motion to Transfer Venue

Swiss Re also moves to transfer the instant Petition to the District of Massachusetts. "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). Numerous factors are relevant to such a determination, and Swiss Re concedes that many of them are not dispositive. (R's Mem. 10 n.3.) I find that the factor of judicial economy weighs most heavily in favor of exercising my discretion and deciding the instant Petition here. "The appointment of an arbitrator is not the same as ordering arbitration." *ACEquip*, 315 F.3d at 157. Ordering the parties to proceed under their agreement in the selection of an umpire is the most efficient way forward; transferring the instant Petition to the District of Massachusetts would burden a second court with considering the instant Petition. It is of no moment that "Swiss Re is justifiably unwilling to re-litigate the same claims that were rejected by the arbitration panel years ago." (R's Mem. 13-14.) As the

6

Second Circuit has noted, "[t]he opposing party need not participate in arbitration after such an appointment." *ACEquip*, 315 F.3d at 157. Swiss Re's Motion to transfer venue is denied.

### C. Petition to Appoint Arbitrator Under Section 5

Section 5 furthers federal policy in favor of arbitration by giving a district court the power to "spur the arbitral process forward, rather than to let it stagnate into endless bickering over the selection process." *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 814 F.2d 1324, 1329 (9th Cir. 1987). "This section still respects the agreements of the parties, by requiring compliance with those agreements when possible." *Id.*

Under Section 5, a district court "need not decide that an arbitration agreement is valid before proceeding to the appointment of an arbitrator," *Nw. Nat'l Ins. Co. v. Insco, Ltd.*, No. 11-CV-1124, 2011 WL 1833303, at *2 n.25 (S.D.N.Y. May 12, 2011) (citing *ACEquip*, 315 F.3d at 156-57), only that there is an agreement to arbitrate, *ACEquip*, 315 F.3d at 156. Both parties agree that there is an agreement to arbitrate – that is, article XVII of the MLRT. (*See* Finnegan Dec. Ex. 1, at 12-13; Vyskocil Dec. Ex. A, at SR06828.)

Section 5 provides that the court "shall" exercise its appointment authority if a party to the arbitration agreement has "fail[ed] to avail" itself of a method of selection provided in the arbitration agreement. 9 U.S.C. § 5; *see In re Salomon Inc. Shareholders' Derivative Litig. 91 Civ. 5500 (RRP)*, 68 F.3d 554, 560 (2d Cir. 1995). There is a "failure to avail" under Section 5 "when an arbitration agreement . . . specifies a procedure for selecting an arbitrator [or umpire], and one of the parties refuses to comply, thereby delaying arbitration indefinitely." *In re Salomon*, 68 F.3d at 560.

This is exactly the case here. The MLRT specifies a clear procedure for constituting a Board of Arbitrators: each party appoints its own arbitrator, and the two arbitrators together

7

choose an umpire; if they cannot agree upon an umpire, each arbitrator names three candidates, two of which are eliminated by the other party's arbitrator, and the umpire is then chosen between the remaining two by drawing lots. (Finnegan Dec. Ex. 1, at 12-13; Vyskocil Dec. Ex. A, at SR06828.) OBA has appointed its arbitrator, Susan Claflin. (*See* Pet. Ex. 2.) Swiss Re at first refused to appoint its own arbitrator, taking the position that the second arbitration was barred by *res judicata*. (*See* Vyskocil Dec. Ex. E.) Thereafter, although Swiss Re appears to have maintained its position that the second arbitration is barred, Swiss Re appointed its own arbitrator, Jonathan Rosen. (*See* Finnegan Dec. Ex. 4, at 2.) Nevertheless, Swiss Re has "decline[d] to participate in a dialogue regarding the selection of an umpire." (*Id.* Ex. 4, at 1; *see* R's Mem. 12-13.) Thus, the constitution of the Board of Arbitrators has stalled at this stage. Because Swiss Re has not complied with the method of selecting an umpire as set forth in the MLRT, it has "fail[ed] to avail" itself of the agreed-upon method, and relief under Section 5 is appropriate. *See In re Salomon*, 68 F.3d at 560. And, per the statutory mandate of Section 5, "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, *such method shall be followed*." 9 U.S.C. § 5 (emphasis added). Accordingly, I order that the parties proceed as set forth in the MLRT – namely, that the two party-appointed arbitrators (Susan Claflin and Jonathan Rosen) choose an umpire. If they cannot agree on an umpire, they must each nominate three candidates, eliminate two of the other's three candidates, and choose an umpire between the remaining two by drawing lots.[7]

It bears noting that:

---

[7] I see no reason to either appoint an umpire myself or select an umpire from candidates submitted by OBA and/or Swiss Re, where there is no impediment to the parties doing what they contracted to do by following the procedures set forth in the MLRT.

8

> [t]he appointment of an arbitrator is not the same as ordering
> arbitration. The opposing party need not participate in arbitration
> after such an appointment. If a party refuses to participate in
> arbitration, precedent suggests that the party would retain the right
> to challenge the validity of the contract or its arbitration clause
> after the arbitration is complete. A party may also make a motion
> for declaratory judgment in order to challenge the arbitration
> clause after the appointment of an arbitrator but before arbitration
> begins.

*ACEquip*, 315 F.3d at 157 (citations omitted). Furthermore, as I am exercising authority pursuant only to Section 5, I go no further than directing the parties to follow the procedures for choosing an umpire set forth in their agreement to arbitrate. *See Pac. Reinsurance*, 814 F.2d at 1329 (Section 5 "respects the agreements of the parties, by requiring compliance with those agreements when possible").[8] Whether Swiss Re can avoid the arbitration by pressing its *res judicata* defense before the arbitrators or in an appropriate Court is for another day.

D. Motion to Enjoin Arbitration Under Section 4

Swiss Re also moves in the alternative for the Court to enjoin the arbitration underlying the instant Petition. The Second Circuit has recently confirmed that, in certain circumstances, a district court has the power to enjoin private arbitration. *See In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 140-41 (2d Cir. 2011). "Petitions to compel and petitions to enjoin are two sides of the same coin." *J.P. Morgan Sec. Inc. v. La. Citizens Prop. Ins. Corp.*, 712 F. Supp. 2d 70, 80 (S.D.N.Y. 2010); *see In re Am. Express*, 672 F.3d at 141 ("'[T]o enjoin a party from arbitrating where an agreement to arbitrate is absent is the concomitant of the power to compel

---

[8] I take no position on the underlying merits of the claim, on the *res judicata* issue, or on whether that issue is for the arbitrators in the first instance; indeed, it would be error for me to do so. *Cf. ACEquip*, 315 F.3d at 158 (error for district court to "have delineated the issues that it believed the arbitrator should address" when exercising its authority under Section 5).

9

arbitration where it is present.'") (quoting *Societe Generale de Surveillance, S.A. v. Raytheon European Mgmt. & Sys. Co.*, 643 F.2d 863, 868 (1st Cir. 1981)).

Swiss Re's own arguments opposing OBA's Section 5 Petition undermine its request for an injunction from this Court pursuant to Section 4. It argues that "the majority rule, which has also been adopted within this district, is that 'where the arbitration agreement designates a specific forum, only a district court in that forum may compel arbitration.'" (R's Mem. 8 (quoting *J.P. Morgan*, 712 F. Supp. 2d at 82).) To the extent that Swiss Re relies on Section 4 for the Court's power to enjoin the arbitration, it thus implicitly suggests that such authority must be exercised by the District of Massachusetts, as "a court order denying a petition *to enjoin* an arbitration has an identical effect to an order *compelling* that arbitration," *J.P. Morgan*, 712 F. Supp. 2d at 80 (emphasis in original), and "a federal court lacks authority pursuant to 9 U.S.C. § 4 to compel arbitration outside its district," *see Sea Spray Holdings, Ltd. v. Pali Fin. Grp.*, 269 F. Supp. 2d 356, 363 (S.D.N.Y. 2003). Although *J.P. Morgan* dealt with a denial of an order enjoining arbitration, a court granting a petition to enjoin arbitration ought also be located in the district where the arbitration would take place, as the power to compel and to enjoin are "two sides of the same coin." *See J.P. Morgan*, 712 F. Supp. 2d at 80; *cf. In re Am. Express*, 672 F.3d at 141 (suggesting that power to enjoin extends only to an "arbitration by parties within its jurisdiction"). Accordingly, I deny Swiss Re's Motion to enjoin the arbitration, without prejudice to renewal in an appropriate forum.

## III. <u>Conclusion</u>

For the foregoing reasons, OBA's Petition pursuant to Section 5 is GRANTED, and Swiss Re's Cross-Motion is DENIED.

The parties are hereby ordered to complete constituting a Board of Arbitrators pursuant to the procedures set forth in article XVII of the MLRT. Specifically, the two party-appointed arbitrators (Susan Claflin and Jonathan Rosen) must choose an umpire. If they cannot agree on an umpire, they must each nominate three candidates, eliminate two of the other's three candidates, and choose an umpire between the remaining two by drawing lots. This shall be accomplished within 21 days of the date of this Order.

I see no need for any further supervision of this process beyond what is set forth in this order. Accordingly, the Clerk of Court is respectfully directed to terminate the pending Motions, (Docs. 5, 10), and close the case.

**SO ORDERED.**

Dated: October 18, 2012
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.